# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

ANGIE SEAY,                       )
                                       )

         **Plaintiff,**           )

                                       )       **Case No. 3:18-cv-00368**

        **v.**                      )       **Judge Trauger / Frensley**

                                       )

SOCIAL SECURITY ADMINISTRATION,   )

                                       )

        **Defendant.**          )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Plaintiff has filed an accompanying Memorandum. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on July 21, 2014, alleging that she had been disabled since February 25, 2014, due to asthma, "back surgery w/

screws," "dropped feet," high blood pressure, carpal tunnel syndrome, and acid reflux. *See, e.g.,*

Docket No. 10, Attachment ("TR"), pp. 66, 160-64. Plaintiff's application was denied both

initially (TR 77) and upon reconsideration (TR 93). Plaintiff subsequently requested (TR 109-

10) and received (TR 36) a hearing. Plaintiff's hearing was conducted on March 22, 2017, by

Administrative Law Judge ("ALJ") Michelle Alexander. TR 36-65. Plaintiff and vocational

expert ("VE"), Cathy Bottromf, appeared and testified. *Id.*

On May 30, 2017, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations. TR 9-21.

Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2019.

2. The claimant has not engaged in substantial gainful activity since February 25, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lumbar spinal stenosis, carpal tunnel syndrome (CTS), lumbosacral and cervical spondylosis without myelopathy, post lumbar laminectomy/fusion syndrome, plantar fasciitis, right lumbosacral radiculopathy, polyneuropathy in diabetes, sciatica, right foot drop, acquired equinus deformity of the right foot, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally lift and carry up to

2

10 pounds; can push and pull as much as can lift and carry; sit for up to 6 hours in an 8-hour work day with normal breaks; stand and walk for 2 hours in an 8-hour work day with normal breaks; must alternate between sitting and standing every 2 hours for 15 minutes in an 8-hour day; occasionally operate foot controls with the right lower extremity; no limitations with the left lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance on level surfaces; occasionally stoop, kneel, crouch, never crawl; must avoid concentrated exposure to dust, odors, fumes, gases, smoke pulmonary irritants, and areas of poor ventilation; must avoid concentrated exposure to extreme cold and extreme heat, humidity and wetness; no work with or near dangerous and moving type of equipment or machinery, moving mechanical parts and unprotected heights; occasionally operate a motor vehicle.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on September 7, 1974 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has at least a high school education (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404 1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from February 25, 2014, through

the date of this decision (20 CFR 404.1520(g)).

TR 14-21.

On July 19, 2017, Plaintiff timely filed a request for review of the hearing decision. TR 155-57. On February 13, 2018, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir.

1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age,

education, and work experience, any other relevant work that exists in the national economy in

significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial
> gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which
> significantly limits his or her ability to work (a "severe"
> impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it
> must be determined whether he or she suffers from one of the
> "listed" impairments or its equivalent.[1] If a listing is met or
> equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level
> impairments, it must be determined whether the claimant can
> return to the job he or she previously held in light of his or her
> residual functional capacity (e.g., what the claimant can still do
> despite his or her limitations). By showing a medical condition
> that prevents him or her from returning to such past relevant work,
> the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the
> claimant's ability to work by proving the existence of a significant
> number of jobs in the national economy which the claimant could
> perform, given his or her age, experience, education, and residual
> functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th

Cir. 1990).

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ accorded improper weight to the opinion of Dr. Christopher Kauffman, her treating physician. Docket Nos. 12, 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

As noted, Plaintiff in the instant action maintains that the ALJ accorded improper weight to the opinion of Dr. Christopher Kauffman, Plaintiff's treating physician. Docket Nos. 12, 13. Specifically, Plaintiff argues that, although the ALJ "clearly indicated that she considered [Dr. Kauffman] as a treating source," she accorded his opinion only "partial weight" and failed to provide good reasons for discounting his opinion. Docket No. 13, p. 6-7, *citing* TR 18-19. Plaintiff asserts, "At no time did the ALJ indicate that Dr. Kauffman's opinion was inconsistent with the record-as-a-whole or with clinical and diagnostic notes," and further contends that the rationale cited by the ALJ does not constitute "good reasons" because it is not supported by substantial evidence in the record. *Id.* at 7. In particular, Plaintiff maintains:

> The ALJ specifically noted multiple grounds for assigning partial
> weight [to] Dr. Kauffman's opinion that are inaccurate on their

> face. First, the ALJ asserted that the category of rarely "was vague,
> and . . . did not explain or quantify rarely in a measurable metric;"
> (R. at 19); however, Dr. Kauffman's MSS clearly defines and
> quantifies "rarely" as 1 to 10% of an 8-hour day. (R. at 1051).
> Second, the ALJ asserted that Dr. Kauffman made use of the
> comments section of the form to note Seay's "right LE weakness"
> and "marked gait abnormality." (R. at 1052).
>
> Additionally, the ALJ contended that Dr. Kauffman's restrictions
> in his 2017 treating source opinions were "inconsistent with each
> other;" however, she provided no further explanation as to how this
> [*sic*] Dr. Kauffman's opinion was inconsistent with itself. (R. at
> 19).

*Id.* at 7.

Plaintiff argues that "[t]here is no defect in Dr. Kauffman's opinion that is so apparent

such that it would excuse the ALJ from offering further explanation, and the ALJ did not appear

to contend that Dr. Kauffman's opinion was inconsistent with or unsupported by the medical

evidence of record, such that the ALJ's decision was erroneous and cannot stand. *Id.* at 7-8.

Defendant responds that the ALJ properly reviewed the record as a whole and reached a

decision that was supported by substantial evidence. Docket No. 14. In particular, Defendant

argues that the ALJ properly weighed the treatment records and conflicting medical opinions and

gave each of the opinions partial weight. *Id.* at 4-5. Defendant maintains that, in addition to the

medical opinions, the ALJ properly weighed Plaintiff's treatment, Plaintiff's pain, and Plaintiff's

subjective complaints. *Id.* at 12. Defendant further argues that the ALJ properly resolved the

conflicts among the medical opinions and provided good reasons for not incorporating more of

Dr. Kauffman's opined limitations. *Id.* at 6, 9.

As to Plaintiff's argument that the ALJ improperly stated that "rarely" was not defined in

Dr. Kauffman's Medical Source Statement ("MSS"), Defendant contends that, although Plaintiff

is correct that "rarely" was defined in the MSS, the definition contained in the MSS does not correspond to the definitions provided by the Dictionary of Occupational Titles ("DOT") and the Commissioner. *Id.* at 9. Defendant maintains that "anything identified as rarely on the form really means occasionally under the <u>DOT</u>," and that "any misstatement by the ALJ regarding the term 'rarely' is inconsequential" because "[r]arely was used once to rate Plaintiff's ability to lift 19 pounds" and the ALJ's Residual Functional Capacity ("RFC") determination is consistent with this limitation when using the proper definition of occasionally. *Id.* at 10.

Addressing Plaintiff's argument that Dr. Kauffman's opinion is not conclusory because he stated that the "other functional limitations" were right leg weakness and marked gait abnormality, Defendant asserts that leg weakness and an abnormal gait do not explain why Plaintiff could not sit for more than 4 hours in an 8-hour workday, nor do they explain why Plaintiff could only occasionally reach above her shoulders. *Id.* Defendant further asserts that, although the ALJ noted that Dr. Kauffman stated that Plaintiff could not use her right foot or leg for repetitive movement, Dr. Kauffman did not provide an opinion regarding non-repetitive movements, such that the ALJ's finding that Plaintiff could occasionally operate right foot controls is consistent with the State agency medical consultants' opinions and also consistent with Plaintiff's admission that she continued to drive despite her right foot impairment. *Id.* at 10-11. Defendant additionally notes that the ALJ identified other inconsistencies within the record as well. *Id.* at 13.

Defendant summarizes their response as follows:

> In summary, the ALJ properly evaluated Plaintiff's disability claim and found her allegations of disability not supported by the record. (Tr. 14-19). In so doing, the ALJ properly considered such factors

as the medical opinions, Plaintiff's medical treatment, the medical
evidence, and inconsistencies within the record. Substantial
evidence supports the ALJ's finding that Plaintiff could perform a
range of sedentary work with postural and environmental
limitations and should be affirmed. See Blakley, 581 F.3d at 406;
Bass, 499 F.3d at 509.

. . .

In summary, the ALJ properly included all limitations supported by
the record into Plaintiff's RFC (Tr. 15). The vocational expert
testified that an individual with Plaintiff's limitations could
perform work existing in significant number[s] in the national
economy (Tr. 20-21, 60-62). As such, the ALJ properly concluded
that Plaintiff was capable of other work and, thus, not disabled (Tr.
20-21).

Id. at 14, 15.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

Regardless of its source, we will evaluate every medical opinion
we receive. Unless we give a treating source's opinion controlling
weight under paragraph (c)(2) of this section, we consider all of the
following factors in deciding the weight we give to any medical
opinion.
(1) Examining relationship. Generally, we give more
weight to the opinion of a source who has examined you than to
the opinion of a source who has not examined you.
(2) Treatment relationship. Generally, we give more
weight to opinions from your treating sources, since these sources
are likely to be the medical professionals most able to provide a
detailed, longitudinal picture of your medical impairment(s) and
may bring a unique perspective to the medical evidence that cannot
be obtained from the objective medical findings alone or from
reports of individual examinations, such as consultative
examinations or brief hospitalizations. If we find that a treating
source's opinion on the issue(s) of the nature and severity of your
impairment(s) is well-supported by medically acceptable clinical
and laboratory diagnostic techniques *and is not inconsistent with
the other substantial evidence in your case record*, we will give it
controlling weight. When we do not give the treating source's

opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added).  *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data,

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

the medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of*

*Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th

Cir. 1985). If the ALJ rejects the opinion of a treating source, however, she is required to

articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.

1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the case at bar discussed the medical evidence as follows:

> The medical evidence includes a history of other medically
> determinable impairments such as extrinsic asthma, angioedema,
> benign hypertension, sleep apnea, non-intractable episodic
> headache, and overactive bladder.
>
> Throughout 2014, the claimant presented to the Allergy and
> Asthma Medicine Clinic for follow-up of asthma and multiple
> episodes of facial angioedema for which she was treated with
> Albuterol, Flovent, Alvesco, Singulair, and an Epipen. A
> spirometry report was normal (1F). She presented to Family
> Medical Associates (FMA) for cold symptoms, chest
> pain/tenderness, asthma, an upper respiratory infection, and acute
> bronchitis (2F/9F). However, multiple x-rays of the chest were
> normal (9F/15F/17F). In May 2015, she was treated for an
> overactive bladder (17F). In November 2015, it was noted she had
> not been to the emergency room (ER) for asthma in the past 2
> years. Upon follow-up in June 2016 and September 2016, the
> claimant indicated noticeable improvement in her coughing and
> shortness of breath with less use of rescue inhalers (15F/17F). She
> had been recently diagnosed with sleep apnea and was using a
> continuous positive airway pressure machine. She had some
> dyspnea upon exertion, but no acute issues regarding its etiology

were found.  Her hypertension was noted as well-controlled (12F).
In August 2016, she again noted her asthma and allergies were
significantly improved (13F).  In October 2016, she reported
electric shock-like pains in her right parietal area of the head
accompanied by blindness in the left eye that lasted for several
seconds.  She was found to have a non-intractable episodic
headache.  However, a CT of the head was overall unremarkable,
and she was treated with medication (15F/17F).

. . .

Throughout 2013, the claimant presented to Premier Orthopedics
and Sports Medicine with lower back pain and leg weakness,
paresthesias, and pain.  She had a normal gait but was found to
have sciatica.  Magnetic resonance imaging (MRI) of the lumbar
spine found moderate to severe bilateral foraminal stenosis,
superimposed disc bulge, central/right paracentral annular tear, and
minor facet arthrosis (5F).  In September 2013, Dr. Christopher
Kauffman performed a laminectomy and instrumented fusion to
treat lumbar spondylosis.  It was noted the claimant tolerated the
procedure well with good improvement in her leg symptoms.  She
participated in physical therapy and was initially prescribed a
walker then a cane (3F/5F/7F).

In February 2014, she indicated to Dr. Kauffman that she had
returned to full-time work but felt she had gone back to work too
soon.  She indicated her work duties required bending and lifting
and [she] experienced more back pain after her return.  Upon
examination, she walked without an assistive device but had a mild
limp on the right.  Dr. Kauffman noted she had made
improvements.  However, she noted that any type of activity
increased her pain (5F/7F).  In March 2104, her body mass index
(BMI) was 33.82 kg/m2, and she was noted as obese.  She weighed
179 pounds with a height of 5 feet, 1 inch.  Upon examination, she
had a normal range of motion of the neck and her musculoskeletal
joints were unremarkable (1F).  The following month, an MRI of
the lumbar spine found minimal retrolisthesis and mild
anterolisthesis.  Two months later, a CT scan of the lumbar spine
found lumbar stenosis, stable retrolisthesis and anterolisthesis, and
mild right neural foraminal narrowing.  Upon review of her MRI,
Dr. Kauffman noted there was no neurologic impingement, her
screws/rods were in good position, and there was no significant
stenosis or displacement of the nerve secondary to soft tissue or
hardware (3F/5F/7F).  In June 2014, the claimant indicated her

preoperative back pain persisted. Upon examination, she had a moderately reduced range of motion of the lumbar spine but negative straight leg tests bilaterally. She ambulated with a limp on the right lower extremity and continued to have difficulty getting to and from a seated position. She walked with a cane. A CT scan of the lumbar spine found stable retolisthesis and anterolisthesis with mild right neural foraminal narrowing (4F/5F/7F). Postoperatively, the claimant had developed a significant right L5 nerve root dysfunction (10F). Dr. Kauffman noted he thought she had reached a peak in her rehabilitation and had not improved despite therapy. A nerve conduction study revealed probable generalized sensorimotor polyneuropathy and suggested remote incomplete axonal loss lesion of the right L5 nerve root. Lumbosacral radiculopathy and polyneuropathy in diabetes were found (4F/5F/7F).

In August 2014, she presented to FMA for left hip and right forearm pain. It was noted that her right foot was permanently dropped, and she used a cane on her right side. An x-ray of the left hip found mild joint space narrowing. Her blood pressure was elevated, she had blisters on her feet, and she reported she was often thirsty. She had a clubfoot with reported swelling and was treated for dermatophytosis of the foot. In November 2014, she presented for chronic lower back pain not relieved by Percocet along with occasional hand numbness. Her blood pressure was elevated again. An x-ray of the thoracic spine found mild dextroscoliosis, and she was prescribed Toradol. Upon examination the following month, she had thoracic and lumbar spine tenderness to palpation. However, she had a normal range of motion of the spine and bilateral upper and lower extremities, and it was noted she could move well. She had normal strength and motor function in the bilateral upper and lower extremities. She indicated that Toradol was not helping but did note that her numbness and tingling had improved. She was treated with Cyclobenzaprine and a Medrol pak (8F/9F). She participated in physical therapy for nearly 6 months until it was determined that she had reached maximum benefit from therapy (11F).

In February 2015, the claimant presented to Dr. Mitul Patel with Advanced Ortho and Spine. He noted she had significant alteration in her gait, weakness, a right dropfoot, and pulling/pressure of the lower back. She was still using a cane and exhibited an awkward gait that he stated was new since her back surgery. Dr. Patel noted

he did not think he could offer anything to the claimant nor did he think any structural spine abnormality was the root cause of her symptoms (10F). The following month, a review of systems indicated a normal gait/station and noted she could move her bilateral upper and lower extremities well (9F). However, throughout 2015, she reported neck, back, bilateral hip, and grip pain. In July 2015, she was in tears due to her reported limitations caused by pain (14F). Throughout 2016, she presented for evaluation of back, hip, and right lateral foot pain. Upon examination, her gait was antalgic. She was swollen and tender over the 5th metatarsal shaft and had a healed incision over the medial hindfoot, which was consistent with a prior clubfoot surgery. She still had a right drop foot. An x-ray of the right foot found mild dorsal degenerative spurring in the midfoot. She was found to have a metacarpal fracture of the foot and was prescribed a walking boot. An x-ray of the thoracic spine found mild/slight scoliotic curvature with no acute osseous abnormality. An x-ray of the lumbar spine found stable grade 1 anterolisthesis with moderate disc space narrowing but no acute osseous abnormality or evidence of abnormal motion with flexion or extension. An x-ray of the right hip found mild right joint space narrowing with no acute osseous abnormality. She weighed 174 pounds with a BMI of 32.92 kg/m2 (14F/15F/17F).

TR 14-18.

The ALJ also discussed Plaintiff's subjective complaints, as well as the medical opinion evidence, stating:

The claimant testified that she suffers from severe lower back, neck, and hip pain that was supposed to be alleviated by back surgery. However, surgery only temporarily relieved her symptoms and actually worsened her pain. She stated that after back surgery she developed a drop foot requiring a cane that she uses daily. She stated her cane was prescribed, and she cannot walk without it. She indicated that she can occasionally drive short distances; otherwise her relatives drive her to places. She stated she has a loss of range of motion in her neck. She testified that medications temporarily helped her pain but she did not want to become dependent on them. In a Function Report, the claimant indicated difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, memory,

completing tasks, concentration, and using her hands. She explained that, on a good day, she could only lift 10 to 15 pounds or less (3E).

. . .

Medical opinions were offered by DDS state agency consultants, consultative examiner Dr. Roy Johnson, and treating physician, Dr. Kauffman (1A/4A/5F/6F/18F). DDS consultants opined less than a full range of sedentary work with standing/walking 3 hours; sitting 6 hours; limited pushing/pulling in the right lower extremities and the performance of all postural activities occasionally except never climbing ladders/ropes/scaffolds; should avoid concentrated exposure to extreme cold, wetness, and humidity and all exposure to hazards (1A). Upon reconsideration, they opined less than a full range of light work with standing/walking 4 hours and should avoid even moderate exposure to hazards (4A). However, their opinion did not give consideration to the claimant's drop/club foot and reliance on a cane, which consistently contributed to her antalgic gait. Additionally, DDS consultants did not consider obesity in combination with her other conditions. The aforementioned could reasonably erode her functional capacity from lifting/carrying more than 10 pounds and standing/walking more than 2 hours. Therefore, their opinion was given only partial weight (1A/4A).

In April 2014, Dr. Kauffman's treatment notes opined the claimant had difficulty getting to and from a seated position and would have difficulty returning to her previous job. He indicated she may have to go on "prolonged disability" (p. 49/5F). Dr. Kauffman's opinion at that time was based on the claimant's reports of difficulty performing her job duties, which required bending and lifting along with his observations of the claimant. Therefore, his opinion that the claimant would have difficulty returning to her past job was given great weight (5F).

During the consultative examination with Dr. Johnson in October 2014, the claimant could get on/off the examination table without assistance. She had a full range of motion of the spine, left ankle, and bilateral elbows and wrists. She had no range of motion of the right ankle. Straight leg tests on the left and in the supine position bilaterally were negative. Her seated straight leg test was positive. There was atrophy of the calf muscle on the right side, and her gait was abnormal. She used a cane and was unable to squat, rise,

balance on 1 foot, or perform tandem walk.  Dr. Johnson opined she could lift up to 15 pounds occasionally, walk at least 30 feet with a cane before needing to rest; stand 1 to 2 hours with normal breaks; no sitting restrictions (6F).  However, Dr. Johnson did not adequately consider the positive examination findings during his own evaluation such as the claimant's non-existent range of motion of the right ankle, positive straight leg test on the left and in the seated position, an abnormal gait, right calf muscle atrophy, and her dependence on a cane.  The aforementioned could reasonably cause further limits in lifting and sitting than those opined by Dr. Johnson.  Additionally, it did not appear that he considered any other treatment records in his opinion such as from the claimant's participation in physical therapy at the time or her continued presentation to FMA for foot, hip, and arm pain.  Therefore, Dr. Johnson's opinion was given partial weight (6F).

In January 2017, Dr. Kauffman provided a Medical Source Statement (MSS) where he opined the claimant could lift up to 9 pounds frequently and up to 19 pounds rarely; never lift 20 pounds or more; carry up to 4 pounds frequently and up to 9 pounds occasionally; never carry 10 pounds or more; sit for 2 hours at a time and for 4 hours total; stand/walk for less than 1 hour total and at a time; unable to use the right foot or bilateral feet for repetitive movement such as operating foot controls; never bend, squat, crawl, or climb; occasionally reach above the shoulder; mild restriction to humidity/temperature changes and exposure to dust, fumes, gases; total restriction around unprotected heights, moving machinery, and driving a motor vehicle.  Dr. Kauffman performed the claimant's back surgery and had longitudinal treatment relationship with her as her treating physician.  However, the limitations in his MSS were inconsistent with each other.  He failed to specify exactly how limited the claimant was in using her bilateral feet/hands for repetitive movement but just indicated whether she could or could not perform the activity.  The category of "rarely" was vague, and his MSS did not explain or quantify rarely in a measurable metric.  Furthermore, he did not provide rationale to support his conclusion.  Therefore, his opinion was given only partial weight (18F).

While the claimant had residual limitation that precluded her from a full range of activities and tasks, she remained capable of performing work within the above residual functional capacity on a regular sustained basis.  Treatment records showed she was unable

to return to her prior job due to an inability to perform duties that required persistent lifting/bending (5F/7F). However, the medical evidence failed to show her pain was of the frequency and/or severity to preclude all work. An x-ray of the thoracic spine and bilateral hips yielded only mild findings. Despite the her [*sic*] alleged pain, it was noted she could move her bilateral upper and lower extremities well without significant range of motion deficits other than an antalgic gait (9F/15F/17F). Throughout 2015, the claimant mentioned her pain was controlled with medication (14F). Treatment records noted some improvement in the claimant's back and bilateral leg pain (10F). Despite the positive radiographic findings of the lumbar spine, there was no acute osseous abnormality or evidence of abnormal motion with flexion or extension (17F). In a Function Report, the claimant indicated she could prepare complete meals several times per day, make-up her bed, wash clothes, drive, shop in stores for groceries, take care of her children and grandchildren, and occasionally go to church on Sundays (3E). Her activities suggest a higher level of autonomy not as limited by pain as alleged by the claimant.

TR 16, 18-19.

Dr. Christopher Kauffman performed Plaintiff's back surgery and has treated Plaintiff periodically since August 2013, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As can be seen in the quoted passages above, however, Dr. Kauffman's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing

opinions lies with the Commissioner.  20 CFR § 416.927(e)(2).

As can be seen above, when evaluating the medical evidence, the ALJ thoroughly discussed Plaintiff's medical records (including, *inter alia*, Plaintiff's visit history, treatment notes, and test results), as well as Plaintiff's subjective complaints, reported medication efficacy, and reported treatment efficacy.  TR 14-19.  When evaluating the medical opinion evidence, the ALJ properly discounted opinions that did not include all of Plaintiff's conditions.  For example, the ALJ explained that she accorded the opinions of DDS consultants only partial weight because they "did not give consideration to the claimant's drop/club foot and reliance on a cane, which consistently contributed to her antalgic gait" and "did not consider obesity in combination with her other conditions."  TR 18.  The ALJ appropriately noted that these considerations "could reasonably erode [Plaintiff's] functional capacity."  *Id.*  The ALJ also accorded only partial weight to the opinion of Dr. Johnson because it "did not appear that he considered any other treatment records" and his opinion "did not adequately consider the positive examination findings during his own evaluation such as the claimant's non-existent range of motion of the right ankle, positive straight leg test on the left and in the seated position, an abnormal gait, right calf muscle atrophy, and her dependence on a cane."  *Id.*  The ALJ again properly noted that these limitations "could reasonably cause further limits" on Plaintiff's abilities.  *Id.*

With regard to Dr. Kauffman specifically, the ALJ in the case at bar accorded great weight to Dr. Kauffman's April 2014 opinion that Plaintiff would have difficulty returning to her past job.  TR 18.  The ALJ explained that Dr. Kauffman's opinion was supported by his treatment notes and observations, along with Plaintiff's reports of difficulty performing her job duties.  *Id.*  Although the ALJ accorded great weight to Dr. Kauffman's April 2014 opinion that

Plaintiff would have difficulty returning to her past job, the ALJ accorded only partial weight to his January 2017 MSS opinion, which was quite restrictive. *Id.* Acknowledging that Dr. Kauffman performed Plaintiff's back surgery and was a treating physician with a longitudinal treatment relationship with Plaintiff, the ALJ explained that she discounted the restrictiveness of Dr. Kauffman's January 2017 MSS because the limitations contained therein were inconsistent with each other, because Dr. Kauffman failed to specify how limited Plaintiff was in using her bilateral feet/hands for repetitive movement, and because Dr. Kauffman did not provide rationale to support his conclusion. *Id.*[3] Plaintiff argues that the ALJ's opinion should be reversed or this action should be remanded because the ALJ's stated reasons do not constitute good reasons for discounting Dr. Kauffman's opinion and because the ALJ did not "indicate that Dr. Kauffman's opinion was inconsistent with the record-as-a-whole or with clinical and diagnostic notes." Docket No. 13, p. 6-7. Contrary to Plaintiff's assertion, the ALJ, through her discussion of the objective medical evidence, Plaintiff's treatment history and efficacy, Plaintiff's subjective complaints, and the medical opinion evidence, has indicated that the restrictions opined in Dr. Kauffman's January 2017 MSS were inconsistent with, and unsupported by other substantial evidence in the record.[4]

---

[3] The ALJ also noted that Dr. Kauffman's use of "rarely" was vague and that he did not quantify rarely in a measurable metric. TR 18. Although the MSS did contain a definition of rarely (1-10% of an 8-hour workday), this misstatement by the ALJ is harmless error because this restriction is consistent with the ALJ's ultimate finding, which utilized "occasionally" as defined by the DOT and accepted by the Commissioner.

[4] The ALJ has therefore properly complied with the goal of 20 CFR § 1527(d) by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend*, 375 F. App'x at 551; *Nelson*, 195 F. App'x at 470-72; *Hall*, 148 F. App'x at 464.

The ALJ's articulated rationale is supported by the evidence and sufficiently specific so as to make clear to the undersigned the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p. Because Dr. Kauffman's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Kauffman's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge